

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 23 2013

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JIMMY TREVINO, §
§
Plaintiff, §
§
VS. § NO. 4:12-CV-717-A
§
CITY OF FORT WORTH, §
§
Defendant. §

MEMORANDUM OPINION
and
ORDER

Now before the court for consideration is the motion for
summary judgment and alternative motion for partial summary
judgment, filed in the above action by defendant, City of Fort
Worth. Plaintiff, Jimmy Trevino, filed a response, and defendant
filed a reply. Having now considered all of the parties'
filings, the entire summary judgment record, and the applicable
legal authorities, the court concludes that the motion for
summary judgment should be granted, and that the motion for
partial summary judgment should be denied as moot.

I.

Plaintiff's Claims

Plaintiff initiated this action on October 8, 2012, by the
filing of his original complaint.[1] Plaintiff alleged that

_____

[1]Plaintiff subsequently filed a first amended complaint and second amended complaint.

(continued...)

defendant discriminated against and terminated him on the basis

of his national origin, Hispanic, and retaliated against him for

engaging in protected activity, all in violation of Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2a

and 2000e-3(a).

## II.

### The Summary Judgment Motion

Defendant argues that it is entitled to summary judgment on

all of plaintiff's claims because he cannot establish a prima

facie case of either discrimination or retaliation. Further,

defendant maintains that it had a legitimate, non-discriminatory

reason for plaintiff's termination, and plaintiff is unable to

prove that defendant's reason is a pretext for unlawful

discrimination or retaliation. Defendant further argues that

even if the court does not grant summary judgment on the merits,

plaintiff is limited to only nine days' back pay and no front-pay

based on after-acquired evidence found on plaintiff's computer,

for which defendant would have terminated him anyway.

---

¹(...continued)
However, the amended complaints did not alter the claims and causes of action asserted in the original complaint.

III.

Facts

The facts set forth below are undisputed in the summary
judgment record:

Plaintiff, a Hispanic male, is a former employee of
defendant.  From March 2003 through January 2008, plaintiff
worked in defendant's code compliance department.  For a time,
plaintiff worked in the environmental management call center,
where he received three disciplinary write-ups, and his
evaluation indicated he needed to improve his punctuality.

In 2007 plaintiff applied for the position of information
technology ("IT") operations specialist in defendant's IT
solutions department.  Wyatt Smith ("Smith"), a supervisor in
defendant's operations division, reviewed plaintiff's application
and credentials, and selected him for an interview, in which
Smith also participated.  Upon conclusion of the interview
process, Smith and the others on the panel recommended that
plaintiff be hired for the position.  Plaintiff continued in that
position from January 2008 until his termination on October 3,
2011.

Smith was plaintiff's supervisor.  Although Smith was
generally satisfied with the quality of plaintiff's work, Smith
developed concerns about plaintiff's attendance, punctuality, and

3

work habits beginning in plaintiff's first year in his position in the IT department. Over the course of the next three years, plaintiff's performance evaluations consistently reflected issues with attendance, punctuality, and excessive internet usage and personal telephone calls. For example, on a mid-year assessment signed August 5, 2008, Smith noted that plaintiff "occasionally reports for work on time and is ready to begin at the start of his shift, but has been late on several occasions. . . . Jimmy could improve by spending less time on personal phone calls and the Internet." Def.'s App. to Br. in Supp. of Its Mot. for Summ. J., and, in the Alternative, Mot. for Partial Summ. J. ("Def.'s App.") at 121. The evaluation also stated that "[w]hen Jimmy . . . gets his attendance more in tune with the other operators he will be on his way to a superior performance." Id. at 126.

Similar comments appear on plaintiff's performance evaluation in January 2009. Smith wrote that plaintiff "occasionally reports for work on time and is ready to begin at the start of his shift, but has been late on three occasions since July. . . . Jimmy could improve by spending less time on personal phone calls and the Internet." Id. at 135. And again, Smith repeated his comment that "[w]hen Jimmy . . . gets his attendance more in tune with the other operators he will be on his way to a superior performance." Id. at 129.

4

Plaintiff's performance evaluation in 2010 showed no improvement in the area of attendance. In 2010 Smith observed that plaintiff "needs to    . . . get his attendance issues corrected," but also noted that "[e]xcept for his attendance [plaintiff] has been improving over the last few months." Id. at 140. The 2010 evaluation again noted that plaintiff

occasionally reports for work on time and is ready to begin at the start of his shift, but has been late on three occasions since his last review and has had eight unexcused absentees [sic] during this review period. . . . Jimmy could improve by spending less time on personal phone calls. He also needs to stay in the data center even at times when it's not very busy.

Id. at 144. The 2010 evaluation also noted that plaintiff had been counseled several times regarding his attendance problems, but still had an issue "with being on time or being on-site. He does call in, but his unexcused absences are excessive." Id. at 146.

In addition to addressing plaintiff's punctuality and attendance on his performance reviews, Smith also initiated other disciplinary action against plaintiff for his attendance problems and excessive internet and telephone usage. For example, in 2009 plaintiff received an oral warning for seven instances of tardiness and ten unscheduled absences, and in 2010 plaintiff received a written warning for excessive personal telephone calls. During 2010, plaintiff had twenty-four unscheduled

5

absences, while of the other six employees in plaintiff's work
group, one had twelve absences,[2] and the remaining five had three
or less.

On May 18, 2010, Smith placed plaintiff on disciplinary
probation for six months. The notice informing plaintiff of his
disciplinary probation reminded plaintiff of his history of
attendance problems, including the performance evaluations and
disciplinary warnings plaintiff had received because of those
problems, and stated that "collectively these incidents
demonstrate a habitual pattern of excessive amount of missed time
at work." Id. at 108. The notice cautioned plaintiff that if he
failed to show improvement within the next month and if his
attendance pattern continued, he would be subject to termination.

On December 7, 2010, Smith suspended plaintiff for three
days for failing to timely give notice prior to being absent from
work. The suspension notice summarized plaintiff's history of
attendance and punctuality problems as well as prior disciplinary
actions. Plaintiff appealed his suspension, and was successful
in having it reduced to one day.

In August 2011, Smith learned that plaintiff had possibly
left the work site without recording the absence on his time

---

[2]The employee with twelve absences was undergoing chemotherapy at the time, and ten of the
absences pertained to the employee's health issues.

6

sheets. Smith asked the City Marshal to review surveillance

videos of the employees' entrance to the workplace. Upon

receiving the Marshal's report, Smith believed that plaintiff was

leaving the workplace during working hours and decided to

investigate further. Smith interviewed plaintiff and his

coworkers, and reviewed plaintiff's time and attendance records

for the days in question. After considering all of the

foregoing, Smith believed that plaintiff left the worksite

without authorization on three different days, for over an hour

each time, without reflecting the absences on his time records.

Based on Smith's belief about plaintiff's unauthorized

absences, combined with plaintiff's lengthy disciplinary history

related to attendance issues, Smith decided that plaintiff's

employment should be terminated.[3] Smith made that recommendation

to his supervisor, Marilyn Marvin ("Marvin"), a senior manager in

the IT solutions department. Marvin agreed with the

recommendation and terminated plaintiff's employment on October

3, 2011.

Plaintiff appealed his termination as provided by

defendant's policies. A senior human resources employee, along

---

[3]The court recognizes that plaintiff's disagreement with Smith's reason for his termination is at the heart of this lawsuit. The court is including the information here to show the sequence of events leading up to plaintiff's termination. Additionally, plaintiff testified in his deposition that he believed Smith believed that plaintiff had committed the infraction.

with a senior manager in the IT solutions department, investigated plaintiff's termination, which included a review of pertinent documents and interviews with plaintiff and his coworkers.  The recommendation of the investigators was that the termination be upheld.

Pursuant to defendant's appeal process, plaintiff then requested an arbitration.  The hearing officer concluded that defendant did not discriminate against plaintiff and recommended that the termination be upheld.  That recommendation was forwarded to the City Manager, who concurred and upheld plaintiff's termination.  Plaintiff subsequently filed a charge of discrimination with the EEOC; that charge was dismissed.

Following plaintiff's termination, he filed a request for documents pursuant to the state's open records laws.  Smith and Marvin assisted in retrieving documents and materials from the computer equipment plaintiff used during his employment.  Smith and Marvin discovered that plaintiff's computer contained numerous personal emails, personal correspondence, and other documents, including a presentation plaintiff prepared for a college class promoting the legalization of marijuana.

IV.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party

9

as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

V.

## Analysis

### A.  Evidentiary Framework

To evaluate claims of national origin discrimination or retaliation under Title VII, absent direct evidence, the court looks to the evidentiary burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as modified by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).  See also McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007) (per curiam).  This framework, in turn, requires plaintiff first to establish a prima facie case.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If plaintiff makes out a prima facie case, a presumption of discrimination or retaliation arises and the burden shifts to defendant to articulate a legitimate, non-discriminatory, non-retaliatory reason for its actions.  Id. at 506-07.  If defendant meets this burden of production, the plaintiff bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for intentional discrimination or

10

retaliation.[4]  Id. at 507; McCoy, 492 F.3d at 557.

B.  Merits

1.  National Origin Discrimination

As plaintiff has offered no direct evidence of national origin discrimination, he must establish a prima facie case by showing that he: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and, (4) was treated less favorably than other similarly situated employees outside the protected group.  Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).

Defendant argues that plaintiff failed to establish the fourth element of his prima facie case because there is no evidence that he was treated less favorably than similarly-situated non-Hispanic employees.  In a case involving violations of the employer's work rules, such as this one, the plaintiff may establish a prima facie case by showing either that he did not violate the rule, or that employees who were not in the protected class engaged in similar acts but were not similarly punished.  Turner v. Kansas City S. Ry. Co., 675 F.3d 887, 892-93 (5th Cir. 2012); Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th

_____

[4]Although a plaintiff can also defeat summary judgment by showing direct evidence of discrimination or retaliation, no such evidence is presented here.

11

Cir. 1995).

To meet the "similarly situated" standard, the employment actions at issue must have been taken "under nearly identical circumstances." Turner, 675 F.3d at 893. "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." Id. The employees are not similarly situated if the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009) (emphasis in original)(citations omitted). "Nearly identical" is not synonymous with "identical," and the employees need not have an identical number of disciplinary infractions; however, the disciplinary records of the plaintiff and the comparator employees must be comparable. Id. at 261.

Here, the summary judgment record reveals that plaintiff had three consecutive performance evaluations that criticized his attendance, punctuality, and work habits, four disciplinary actions for excessive internet usage, a verbal warning for excessive personal phone calls, and an oral warning, written

12

warning, six-month disciplinary probation, and one-day suspension for attendance problems.  Additionally, the record shows that in 2010, of the seven employees in plaintiff's work group, plaintiff had twenty-four unscheduled absences, one employee had twelve (ten of which were related to health reasons), and the remaining employees had three or less.

By way of comparators, plaintiff offers the affidavits of two former coworkers, Perry Layfield ("Layfield") and Judith Clark ("Clark").  Layfield and Clark averred that each left the workplace for lunch or other personal reasons, without consequence.  Also, in his affidavit, plaintiff stated that Smith advised him it was "standard operating procedure" for employees to leave during their shift to eat; that other employees did so; and plaintiff also left occasionally to eat or bring food back. Pl.'s App. of Summ. J. Evidence ("Pl.'s App.") at 21.  Smith also advised plaintiff that it was unnecessary to adjust his time sheet to reflect time he left to eat.  Plaintiff observed that other employees did not adjust their time sheets for the time they spent eating or getting food, and plaintiff followed suit. Plaintiff argues that this evidence of other "similarly situated" employees who were not disciplined for the same conduct is sufficient both to establish his prima facie case and to show pretext.

13

Plaintiff misapprehends the showing required to establish a "similarly situated" employee. None of the foregoing affidavits provides evidence of any other employee who had a comparable number of absences, or comparable disciplinary history of attendance and punctuality issues, as plaintiff in order to be considered "similarly situated."[5] While Layfield and Clark testified that they left the work site on occasion for personal reasons without facing disciplinary action, at most they represented that they engaged in conduct that could have resulted in disciplinary action had Smith been aware of it. Nothing in their affidavits suggests that they engaged in the same type of conduct, to the same extent, as plaintiff did throughout his tenure with defendant. Nor do either Layfield or Clark indicate that Smith knew of their conduct but chose to ignore it. See Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001) (plaintiff not similarly situated to other employees where no one in a supervisory position was aware of other employee's actions).

Nor does plaintiff's affidavit establish the existence of any similarly situated employees. Plaintiff's affidavit

---

[5]Layfield testified that, in addition to plaintiff, at least one other employee was disciplined for leaving the worksite. Although no information is provided about the national origin of this employee, the fact that at least one other coworker also faced disciplinary action for a similar reason tends to work against plaintiff's contention that he was "singled out" for discipline.

14

addresses what Smith told him concerning leaving for meals or to obtain food and whether or not he needed to record that time. Plaintiff's affidavit ignores, or fails to address, his history of disciplinary actions based on unexcused absences, tardiness, and excessive internet usage and telephone calls. In other words, plaintiff's disciplinary history was comprised of significantly more than merely failing to adjust his timesheet when he left for a meal. Plaintiff has directed the court to no evidence of another employee in his department that had a similar disciplinary history, and Smith averred that no employee had any similar history.

Although plaintiff states in his affidavit, in a generalized way, that he "began to receive numerous reprimands and poor evaluations for attendance," Pl.'s App. at 21, he directs the court to nothing in the summary judgment record showing that he ever disputed, challenged, or disagreed with the evaluations and disciplinary actions at the time they were assessed. Nor does he attempt, in his affidavit, to challenge any of the specific disciplinary actions against him over the course of his three-year tenure in the IT solutions department. His generalized, after-the-fact assertions are insufficient to raise an issue of

material fact.[6]

Plaintiff also relies on two additional sets of items in his appendix which he argues provide evidence of "similarly situated" employees: pages that plaintiff contends are printouts of video footage from his workplace that purport to show other employees "arriving late, leaving during their shift, and going home early," Pl.'s Resp. to Def.'s Mot. for Summ. J. and Br. in Supp. at 6; and papers that plaintiff claims are time sheets from some of these same employees allegedly showing that they failed to record their time away from work.

Plaintiff's reliance on these items is unavailing. First, no attempt is made to authenticate any of the aforementioned materials. Unauthenticated documents are not proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam). Second, although plaintiff describes the documents as proof that other employees engaged in the same conduct that he did, at most the documents show pictures of individuals in a hallway. Nothing in the summary judgment record proves that any of the individuals in the photos were "arriving late, leaving during their shift, and going home early," as

_____

[6]Although plaintiff contends in his response brief that he was "singled out" for discipline, the evidence fails to support this conclusory assertion. For example, plaintiff admitted that his performance evaluations in 2008, 2009, and 2010 all documented his supervisor's concerns about his attendance, punctuality, and work habits. He also testified that he did not disagree with any of those evaluations.

16

plaintiff contends, or that they were doing anything without authorization from their supervisor, or that Smith was aware of the conduct purportedly demonstrated therein.  The court is not persuaded that these papers are evidence of anything.[7]

Smith testified that he determined plaintiff's employment should be terminated based on the three times on three different days in August that plaintiff was absent without authorization for over an hour each time without reflecting the time away on his worksheet, combined with plaintiff's "poor disciplinary history," including his previous attendance and reporting infractions.  Def.'s App. at 224.  Although, as plaintiff notes, the conduct need not be identical, it must be comparable in terms of the employees' circumstances and the seriousness of the misconduct.  See Lee, 547 F.3d at 261; Okoye, 245 F.3d at 514. Plaintiff has adduced no summary judgment evidence of any employee with a comparable disciplinary history who was treated differently by Smith.  Instead, the summary judgment evidence clearly establishes that the difference between plaintiff's conduct and that of other employees "accounts for the difference in treatment received from the employer."  Lee, 547 F.3d at 260. Accordingly, plaintiff has failed to establish the fourth element

---

[7]Plaintiff's response states that he did not have the video footage to present in his appeals. However, in his affidavit plaintiff states that he was advised not to include it in his arbitration.

17

of his prima facie case.

Even if plaintiff had established his prima facie case,
summary judgment is warranted because defendant has satisfied its
burden to articulate a legitimate, non-discriminatory reason for
his termination, and plaintiff has failed to show pretext.
Defendant claims it terminated plaintiff based on Smith's belief
that plaintiff's conduct constituted a violation of defendant's
policies and work rules, combined with plaintiff's excessive
disciplinary history.  An employer's good-faith belief that an
employee has engaged in misconduct, even if incorrect,
constitutes a legitimate, nondiscriminatory reason for an adverse
employment action.  Mayberry, 55 F.3d at 1091.

Plaintiff's only argument as to pretext is his contention
that he was treated differently from other non-Hispanic
employees.  The court has already concluded that the summary
judgment record is devoid of evidence of any similarly situated
employees as would establish plaintiff's prima facie case.  For
the same reason, the court finds plaintiff has adduced no
evidence to show that defendant's reason was a pretext for
unlawful discrimination.

Defendant also argues that the "same actor inference" offers
additional support for summary judgment.  The "same actor
inference" arises when the same person both hires and fires, or

18

otherwise imposes an adverse action on, the plaintiff. Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996), abrogated in part on other grounds, Russell v. McKinney Hosp. Venture, 235 F.3d 219 (5th Cir. 2000). As explained by the Fifth Circuit,

> [c]laims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, [i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.

Id. (alteration in original) (citation omitted). The same actor inference thus creates a presumption that the adverse action imposed on a plaintiff was not the result of unlawful discrimination.

In the instant action, it is undisputed that Smith participated on the panel in interviewing plaintiff and also recommended that plaintiff be hired for the position. Because Smith was responsible for recommending both plaintiff's hiring and his termination, there is an inference that discrimination was not the reason for the adverse action against plaintiff. Id.

The inference created by the same actor is a rebuttable one. Id. However, plaintiff has failed even to address this argument in his response, much less direct the court to any summary judgment evidence that would rebut the inference. Accordingly, the court concludes that plaintiff has failed to overcome the

19

presumption of nondiscrimination created by the same actor inference. The same actor inference, in conjunction with the foregoing discussion of plaintiff's failure to establish his prima facie case or to show pretext, supports a conclusion that plaintiff's termination was not the result of unlawful discrimination.

2.   Retaliation

To establish a prima facie case of retaliation, plaintiff must show that (1) he participated in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008). As discussed supra, defendant has produced a legitimate, non-retaliatory reason for the adverse action, requiring plaintiff to prove that the reason is a pretext for retaliation. Id. Plaintiff bears the ultimate burden to show that his "protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, ___ U.S. ___, 133 S. Ct. 2517, 2534 (2013); see also Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).

Defendant contends that summary judgment is warranted on two grounds: plaintiff failed to establish a prima facie case because

he cannot show a causal link between any purported protected activity[8] and the termination of his employment; and, even if plaintiff has established a prima facie case, he cannot prove that defendant's reason for his termination was a pretext for unlawful retaliation. The court concludes that summary judgment is warranted on either of the grounds raised.

Plaintiff's arguments concerning his prima facie case and pretext are similar in that both rely on the timing between his protected activity and his termination, based on the following sequence of events: plaintiff complained about discrimination in December 2010 when he appealed his suspension; sometime thereafter, Smith told Layfield that plaintiff would eventually "commit an infraction that would allow Smith to get rid of" plaintiff, Pl.'s App. at 25; and Smith terminated plaintiff's employment in October 2011. Plaintiff's "timing" argument is insufficient to establish either a prima facie case or "but for" causation.

Close timing between an employee's protected activity and an adverse action may provide the causal connection needed to establish a prima facie case. In the Fifth Circuit, however, "close timing" means what it says: the court has found "a time

---

[8]Defendant disputes that plaintiff engaged in any protected activity but is accepting that premise for purposes of the summary judgment motion.

lapse of up to four months" close enough to establish the causal connection needed to establish a prima facie case, Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001), but "has never held that a 10-month time lapse, on its own," is sufficient. Harvey v. Stringer, 113 F. App'x 629, 631 (5th Cir. 2004) (per curiam). Likewise, the Supreme Court, in considering the timing necessary to establish the causal connection prong of the prima facie case, acknowledged that the timing must be "very close," and cited with approval cases holding three months and four months were insufficient. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam). Consistent with these authorities, the ten-month period between plaintiff's complaint of discrimination and his termination is insufficient to establish a prima facie case.

To establish his prima facie case, plaintiff also relies on Smith's statement to Layfield that Smith was "out to get" plaintiff. Pl.'s App. at 25. Plaintiff uses that phrase out of context in his response brief. According to Layfield's affidavit, Smith told Layfield "he was going to 'Keep a closer eye on Jimmy, and that no matter how long it took, Jimmy would commit an infraction that would allow Smith to get rid of him.'" Id. (alterations in original). Rather than being a statement of retaliatory intent, however, the plain import of this statement

22

is that Smith expected plaintiff to persist in the type of conduct in which he had engaged during the past three years, and Smith would take action at that time. The court thus finds this statement insufficient to establish the causal connection necessary for a prima facie case.

Even if plaintiff has established a prima facie case of retaliation, however, he has failed to prove pretext or show that but for his protected activity his employment would not have been terminated. Nassar, ___ U.S. ___, 133 S. Ct. at 2534; Septimus, 399 F.3d at 608. Notably, the showing to establish "but for" causation is more stringent than the causal connection required to establish a prima facie case. Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002).

Plaintiff first attempts to show pretext by the purported "close timing" between his protected activity and his termination. The Fifth Circuit has "affirmatively reject[ed] the notion that temporal proximity standing alone can be sufficient proof of but for causation." Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007). The court has already held that the ten-month period between plaintiff's protected activity in December 2010 and his termination in October 2011 was too tenuous to support a prima facie case. Given the stricter "but for" showing required at the pretext stage, plaintiff's

temporal proximity argument fails to make the required showing.

Plaintiff also relies on the alleged "falsity" of defendant's reason for terminating his employment, as well as Smith's statement to Layfield. Both fail to establish pretext or "but for" causation. Plaintiff cannot establish pretext merely by disputing or disagreeing with defendant's proffered reason for his termination. Evans, 246 F.3d at 355. Although plaintiff contends the reason was false, he admitted in his deposition that he committed the policy violation for which he was terminated, and he did not dispute or challenge the other disciplinary actions at the time they were taken, other than appealing the three-day suspension. Nor does Smith's statement to Layfield support an inference of retaliation. Absent from the statement is any indication that Smith planned to keep a close eye on plaintiff because plaintiff complained of discrimination.

In short, plaintiff has adduced nothing as would support an inference of retaliation. A subjective belief that one is the victim of retaliation, no matter how sincerely held, is insufficient to establish "but for" causation or defeat summary judgment. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), superceded by statute on other grounds, 28 U.S.C. § 636(b)(1).

\* \* \* \*

The court has considered defendant's argument concerning after-acquired evidence and finds it to be meritorious.  Given the dismissal of plaintiff's claims, however, the court need not reach that issue.

VI.

Order

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action brought by plaintiff, Jimmy Trevino, against defendant, City of Fort Worth, be, and are hereby, dismissed with prejudice.

The court further ORDERS that defendant's motion for partial summary judgment be, and is hereby, denied as moot.

SIGNED August 23, 2013.

_____
JOHN McBRYDE
United States District Judge

25